IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CITY OF STERLING HEIGHTS GENERAL EMPLOYEES' RETIREMENT SYSTEM, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 11 C 8332 |
| HOSPIRA, INC., THOMAS E. WERNER, CHRISTOPHER B. BEGLEY, and F. MICHAEL BALL, | ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

This is a securities class action against Hospira, Inc., F. Michael Ball, Thomas E. Werner and Christopher B. Begley. Four movants seek appointment as Lead Plaintiff and Lead Counsel: 1) Sheet Metal Workers' National Pension Fund ("Sheet Metal") and KBC Asset Management NV ("KBC") (collectively, the "Institutional Investor Group") (R. 18); 2) Ironworkers Locals 40, 361 & 417 – Union Security Funds ("Ironworkers Locals 40, 361 & 417"), Iron Workers Local 580 – Joint Funds ("Iron Workers Local 580"), and Iron Workers Local 40 ("Iron Workers Local 40") (collectively, the "Ironworkers Group") (R. 21); 3) The Heavy & General Laborers' Locals 472 & 172 Pension & Annuity Funds and the Roofers Local No. 149 Pension Fund (collectively, the "Laborers and Roofers Funds") (R. 25); and 4) New Jersey Building Laborers Pension Fund ("New Jersey Laborers") and Musicians' Pension Fund of Canada ("Musicians' Pension Fund") (R. 28).

In addition, as discussed below, after the movants filed their motions, the Institutional Investor Group and the Laborers and Roofers Funds (collectively, the "Combined Institutional Investor Group") amended their proposals and proposed a joint appointment as lead plaintiff. For the reasons discussed below, the Court grants the amended motion of the Combined Institutional Investor Group to serve as lead plaintiff, and approves the selection of Motley Rice LLC and Robbins Geller Rudman & Dowd LLP as lead counsel. The Court denies the remaining motions.

## BACKGROUND

On November 21, 2011, the City of Sterling Heights General Employees' Retirement System filed this securities class action on behalf of all persons who purchased or acquired the common stock of Hospira between March 24, 2009 and October 17, 2011, against Hospira, F. Michael Ball, Thomas E. Werner, and Christopher B. Begley. Hospira is a global speciality pharmaceutical and medication delivery company that provides generic injectable products in multiple dosages and formulations, as well as integrated fusion therapy and medication management systems. (R. 1, Complaint at ¶ 2.) Its products are "used by hospital and alternative site providers, such as clinics, home healthcare providers and long-term care facilities." (*Id.* at ¶ 2.) Defendant F. Michael Ball has served as the Chief Executive Officer ("CEO") of Hospira since March 28, 2011 and the Director of the Board since March 2011. (*Id.* at ¶ 15.) Defendant Thomas E. Werner is the Chief Financial Officer and Senior Vice President of Finance of Hospira. (*Id.* at ¶ 16.) Defendant Christopher Begley is the Executive Chairman of the Board of Hospira, and served as Hospira's CEO until March 28, 2011. (*Id.* at ¶ 17).

Plaintiff alleges violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5. It alleges that Defendants issued materially false and misleading statements regarding Hospira's financial and business prospects during the Class Period. "Specifically, the Company touted to investors Hospira's ability to streamline its process and practices in order to boost the Company's long-term profitability and increase the return for Hospira shareholders." (*Id.* at ¶ 3.)

On December 9, 2011, the IUE-CWA Local 475 Pension Plan filed a class action against Hospira and the same individual Defendants alleging the same basis for liability under Section 10(b) and 20(a) fo the Securities Exchange Act of 1934 and Rule 10b-5. (*See IUE-CWA Local 475 Pension Plan v. Hospira, Inc.*, No. 11-8746 ("the IUE-CWA Action")). On February 1, 2012, the Court granted the agreed motions to consolidate the IUE-CWA Action with this one. (R. 51). The moving parties now seek appointment of a lead plaintiff.

## ANALYSIS

**I.**     **Legal Standard**

The Private Securities Litigation Reform Act of 1995 ("PSLRA") provides guidelines for the appointment of a lead plaintiff in a securities class action case. The PSLRA requires that the Court "appoint as a lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of the class members...." 15 U.S.C. § 78u-4(a)(3)(B)(I). The PSLRA establishes a rebuttable presumption that the "most adequate plaintiff" is the "person or group of persons" who "has either filed the complaint or made a motion in response to a notice," "has the largest financial interest in the relief sought by the class," and "otherwise satisfies the requirements of Rule 23 of the Federal

Rules of Civil Procedure." 15 U.S.C. 78u-4(a)(3)(B)(iii)(aa); (bb); and (cc). This presumption may be rebutted, however, if a member of the purported class establishes that the "presumptively most adequate plaintiff will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iv). The PSRLA further provides that the "most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." *Id.* at 15 U.S.C. § 78u-4(a)(3)(b)(v).

## II.   Timing of Motions

On November 21, 2011, Sterling Heights published notice of the pendency of the action over *Business Wire*, a national business-oriented wire service, advising members of the proposed class who purchased Hospira stock during the Class Period of their right to move the Court to serve as lead plaintiff no later than 60 days from the date of publication. The 60 day period ran on January 20, 2012. Each of the following movants timely filed its motion for appointment of lead plaintiff as required under the PSLRA: 1) the Institutional Investor Group, 2) the Ironworkers Group, 3) Laborers and Roofers Funds, and 4) the New Jersey Laborers. Each of these movants constitutes a group of sophisticated institutional investors who purchased Hospira stock during the Class Period.

On February 1, 2012, the Court held a status hearing on the pending motions.[1] During the hearing, the following colloquy took place regarding the pending motions for appointment of lead plaintiff:

---

[1] This case was reassigned to this Court from the Honorable William Hibbler by the Executive Committee on March 19, 2012. (R. 60.) This Court held the February 1, 2012 hearing for Judge Hibbler.

| | |
|---|---|
| MR. PARRETT: | Your Honor, I'd just like to say for the record that within the next ten days, before we do respond, we certainly intend to talk to co-plaintiffs' counsel and try to work this out. |
| THE COURT: | That is an excellent idea. |
| MR. PARRETT: | I encourage everyone to do that. |
| THE COURT: | If you can reach an agreement instead of a response, you should file a joint agreement. You are all aligned, in terms of your interests in this case. It would make a lot of sense if you could reach agreement on -- |
| MR. PARRETT: | And we've all suffered losses. I put that out there, as well. |

******

| | |
|---|---|
| THE COURT: | But I will stick with, all plaintiffs' counsel are certainly aligned to a large extent, that it would make sense if you could reach some type of agreement; but, if not, Judge Hibbler will rule. |

After counsel for the Institutional Investor Group informed the Court that he wanted to attempt to reach an agreement with the other lead plaintiff contenders and to resolve the disputes among themselves, the Institutional Investor Group communicated with the other groups seeking appointment as lead plaintiff in this case in an attempt to resolve the pending motions. Ultimately, the Institutional Investor Group and the Laborers and Roofers Funds modified their initial proposals. Instead of their original proposals, the Combined Institutional Investor Group submitted a joint proposal and stipulation to serve as lead plaintiffs together. They ask the Court to appoint both the Institutional Investor Group and the Laborers and Roofers Funds as lead plaintiffs on behalf of all investors who purchased or otherwise acquired Hospira stock during the Class Period.

The New Jersey Laborers and Musicians' Pension Fund did not object to the proposal of the Combined Institutional Investor Group. The Ironworkers Group "did not choose to join with

any other plaintiffs or plaintiff groups as [it does] not have any prior relationship with plaintiffs other than IW 40 and IW 40, 361 & 417, and [does] not believe that joining into a mega-group after filing [its] motion for appointment as lead plaintiff here would be appropriate or consistent with the Private Securities Litigation Reform Act of 1995."[2] (R. 56-3, Declaration of Patrick Doherty, at ¶ 11.)

Although the Combined Institutional Investor Group filed its joint, amended proposal after the 60 day deadline in the PSLRA, courts have permitted amended motions by groups that were combined after the 60 day deadline as long as each member of the amended group previously filed a timely motion for appointment of lead plaintiff. *See e.g., Peters v. Jinkosolar Holding Co., Ltd.,* No. 11 Civ. 7133, 2012 WL 946875, at *10 (S.D.N.Y. March 19, 2012). Here, both the Institutional Investor Group and the Laborers and Roofers Funds timely filed their initial motions. Accordingly, the Court finds the amended proposal timely.

### III. Largest Financial Interest

The PSLRA presumes that the "most adequate plaintiff" is the plaintiff who, among other factors, "has the largest financial interest in the relief sought by the class." The "largest financial interest" provision seeks "to increase the likelihood that institutional investors will serve as lead plaintiffs by requiring courts to presume that the member of the purported class with the largest financial stake in the relief sought is the 'most adequate plaintiff.'" H.R. Conf. Rep. 104-369. The PSLRA, however, does not specify how courts should measure the "largest financial interest

---

[2] Despite this disagreement, the Court notes that in a different class action suit under the PSLRA, the same Ironworkers Group represented by the same counsel joined a stipulation filed prior to the hearing date in which all of the movings parties, except one, supported a joint proposal for appointment of a group of unrelated entities and their counsel to serve as lead plaintiff. (R. 53-6, Transcript from *Minneapolis Firefighters' Relief Ass'n v. Medtronic, Inc.*, No. 08-6324 (D. Minn.).)

in the relief sought by the class."

### A. LIFO and FIFO

Many courts have applied a four factor test in determining the group or groups of persons who have the largest financial interest in the relief sought by the class. These factors include:

> (1) the total number of shares purchased during the class period; (2) the net shares purchased during the class period (in other words, the difference between the number of shares purchased and the number of shares sold during the class period); (3) the net funds expended during the class period (in other words, the difference between the amount spent to purchase shares and the amount received for the sale of shares during the class period); and (4) the approximate losses suffered.

*Lax v. First Merch. Acceptance Corp.,* No. 97 C 2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997). *See also In re: Cendant Corp. Litig.*, 264 F.3d 201, 263 (3d Cir. 2001) ("we agree with the many district courts that have held that courts should consider, among other things: (1) the number of shares that the movant purchased during the putative class period; (2) the total net funds expended by the plaintiffs during the class period; and (3) the approximate losses suffered by the plaintiffs"); *In re CMED Sec. Litig.*, No. 11 Civ. 9297, 2012 WL 1118302, at *3 (S.D.N.Y. April 2, 2012) (same). While courts differ on the precise weight to apply to each factor, most courts agree that fourth factor – the approximate losses suffered – is the most salient factor in assessing the lead plaintiff. *See In re CMED Sec. Litig.*, 2012 WL 1118302 at *3 ("In giving weight to the four factors, courts in this District, as others, 'place the most emphasis on the last of the four factors: the approximate losses suffered by the movant' above any weight accorded to net shares purchased and net expenditures."); *In re Diamond Foods, Inc. Sec. Litig.*, __ F.Supp.2d __, 2012 WL 934030, at *2 (N.D. Cal. Mar. 20, 2012)(the "fourth factor, 'approximate loss,' is generally considered the most important factor"); *Canson v. WebMD Health Corp.*, No. 11 Civ. 6031, 2011 WL 5331712, at *2 (S.D.N.Y. Nov. 7, 2011) (fourth factor "weighs most heavily in

the court's analysis").

Here, the moving parties have presented the approximate losses they suffered and their overall financial interests based on different accounting methodologies. "In the context of a securities class action, FIFO and LIFO refer to methods used for matching purchases and sales of stock during the class period in order to measure a class members damages." *In re CMED Sec. Litig.,* 2012 WL 1118302, at *3, quoting *In re AOL Time Warner, Inc.*, No. 02 Civ. 5575, 2006 WL903236, at *17 (S.D.N.Y. Apr. 6, 2006). "'LIFO,' or 'last in, first out,' calculates loss by assuming that the stocks purchased most recently were sold first." *In re CMED Sec. Litig.,* 2012 WL 118302 at *3. "The 'FIFO' (first in, first out) method for calculating loss assumes that the earliest purchased securities are those sold first." *Id.* Here, under either method, it is undisputed that neither the New Jersey Laborers nor the Laborers and Roofers Funds alone suffered the greatest loss among the movants.[3] Accordingly, they do not have the largest financial interest.

The Court thus turns to the financial interest of the remaining movants – the Institutional Investor Group, the Ironworkers Group, and the Combined Institutional Investor Group. The Institutional Investor Group argues that it has the largest loss under FIFO. In contrast, the Ironworkers Group asserts that it has suffered the largest loss based on the LIFO methodology. Under either FIFO or LIFO, it is undisputed that the Combined Institutional Group suffered the greatest loss during the Class Period. The estimated losses[4] and other relevant factors for the

---

[3] Under LIFO, the New Jersey Laborers and Musician's Pension Fund of Canada suffered a joint loss under LIFO of approximately $738,724. (R. 30 at 7-8.) The Laborers and Roofers Funds suffered a loss of approximately $1,564,321.

[4] The loss amounts are slightly different in the parties submissions based on the different stock prices utilized by the parties. The Combined Institutional Investor Group used a hold price of $30.1634 and the Ironworkers Group used a price of $30.1955. The difference is not material in calculating the loss amounts for purposes of the selection of lead plaintiff.

remaining movants are set forth below:

| | *Lax* Factors | | | | |
|---|---|---|---|---|---|
| **Movant** | **Purchased Shares** | **Net Shares** | **Net Funds Expended** | **FIFO Loss** | **LIFO Loss** |
| Total: Ironworkers Group | 152,800 | 152,800 | $7,475,551.00 | ($2,866,568.39) | ($2,866,568.39) |
| Total: Combined Institutional Investor Group | 457,934 | 191,074 | $9,228,204.76 | ($4,590,842.98) | ($3,529,449.50) |
| *Institutional Investor Group* | *379,004* | *112,144* | *$5,285,323.64* | *($3,026,521.31)* | *($1,965,127.83)* |
| *Laborers and Roofers Funds* | *78,930* | *78,930* | *$3,942,881.12* | *($1,564,321.67)* | *($1,564,321.67)* |

The PSLRA does not address which accounting method of loss calculation courts should employ, but courts in this district and others have preferred LIFO over FIFO as the appropriate method to calculate losses for purposes of appointment a lead plaintiff in a securities fraud case. *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 129 (S.D.N.Y 2011) (collecting cases); *Hill v. Tribune Co.*, No. 05 C 2602, 2005 WL 3299144, at *2 (N.D. Ill. Oct. 13, 2005) ("Under [LIFO] methodology, a potential lead plaintiff which, during the class period, was a net seller of the pertinent stock generally has a net gain and therefore generally will not have the largest financial interest in the litigation"); *In re Comdisco*, No. 01 C 2110, 2004 WL 905938 (N.D. Ill. April 26, 2004); *In re Comdisco Sec. Litig.,* 150 F.Supp.2d 943, 945-46 (N.D. Ill. 2001). "The main advantage of LIFO is that, unlike FIFO, it takes into account gains that might have accrued to plaintiffs during the class period due to the inflation of the stock price. FIFO ... may exaggerate losses." *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 101 (S.D.N.Y. 2005).

In assessing the largest financial loss, the Combined Institutional Investor Group suffered the largest loss under LIFO. The Ironworkers Group, however, suffered a larger LIFO loss than the Institutional Investor Group alone.

**B.     Groups of Investors**

Although the Combined Institutional Investor Group suffered the largest loss under LIFO, the Ironworkers Group nonetheless challenges its appointment as lead plaintiff in this case. The Ironworkers Group contends that the Combined Institutional Investor Group is comprised of two unrelated groups of institutional investors which has "evidenced that they are nothing more than a convenient grouping of plaintiffs pieced together by their counsel for the sole reason of securing a leadership position in this action." (R. 56, Memo in Further Support at 11.) The Ironworkers Group also consists of a group of investors, but, they argue that they are a cohesive, streamlined group whose "multi-faceted relationship predates the current litigation." (*Id.*) The Ironworkers Group further argues that the unrelated groups comprising the Combined Institutional Investor Group have not demonstrated that they can manage the litigation as effectively or efficiently as the Ironworkers Group. According to the Ironworkers Group, the Court must look only at the initial movants in assessing the lead plaintiff, and should thus appoint it as lead plaintiff because, compared to the Institutional Investor Group, it has the largest loss under LIFO and the most retained shares.

As other courts have recognized, the plain language of the PSLRA contemplates the selection of a group of individuals as lead plaintiff. Specifically, the PSLRA directs courts to "appoint as lead plaintiff the member or *members* of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members...." 15 U.S.C. § 78u-4(a)(3)(B)(i). In addition, the PSLRA defines the "most adequate plaintiff" as the

"person or *group of persons* that ... in the determination of the court, has the largest financial interest in the relief sought by the class...." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) (emphasis added). The PSLRA does not, however, provide any guidance on the relationship, if any, required among the members in the group.

The Seventh Circuit has not addressed whether unrelated class members may aggregate their losses in order to create the largest financial loss for lead plaintiff purposes. The Third Circuit has expressly "disagre[ed] with those courts that have held that the statute invariably precludes a group of 'unrelated individuals' from serving as a lead plaintiff." *In re Cendant Corp. Litig.*, 264 F.3d at 266. The *Cendant* court further added: "We do not intimate that the extent of the prior relationships and/or connection between the members of a movant group should not properly enter into the calculus of whether that group would 'fairly and adequately protect the interests of the class,' but it is this test, not one of relatedness, with which courts should be concerned." *Id.* at 266-67. As one court recently noted, the majority of courts address the issue of "permitting unrelated investors to join together as a group seeking lead-plaintiff status on a case-by-case basis.'" *Goldstein v. Puda Coal, Inc.,* No. 11 Civ. 02598, 2011 WL 6075861, at *6 (S.D.N.Y. Dec. 6, 2011), quoting *Varghese v. China Shenghuo Pharm. Holdings, Inc.,* 589 F. Supp. 2d 388, 392 (S.D.N.Y. 2008). The same court observed:

> Although courts will resist appointing as lead plaintiff a group that is simply an artifice cobbled together by cooperating counsel for the obvious purpose of creating a large enough grouping of investors to qualify as lead plaintiff, a group consisting of persons that have no pre-litigation relationship may be acceptable as a lead plaintiff candidate so long as the group is relatively small and therefore presumptively cohesive.

*Id.* (quoting *Janbay v. Canadian Solar, Inc.,* 272 F.R.D. 112, 119 (S.D.N.Y. 2010) (quotation marks omitted)). *See also Bang v. Acura Pharms, Inc.*, No. 10 C 5757, 2011 WL 91099, at *2 (N.D. Ill. Jan 11, 2011) ("Recently, the 'trend' has been to allow small groups of investors to act

as lead plaintiff even if they do not have pre-existing relationships.").

One court recently articulated relevant factors that courts look to when assessing whether unrelated groups can serve as lead plaintiff:

> Courts also look for evidence that the group will be able to function cohesively, which can include evidence regarding "why the individual members chose to work as a group; how the group intends to function collectively, including how they plan to communicate; the protocol the group will use to address disagreements; background information regarding individual members of the group; and the members' willingness to accept the role and responsibilities of lead plaintiff." *Goldstein,* 2011 WL 6075861, at *7. *See Janbay,* 272 F.R.D. at 119–20 (approving group that submitted evidence that the members are "sophisticated individuals who have demonstrated their intent to participate directly in this litigation and their willingness and ability to serve as class representatives" and that "they have a detailed decision-making structure in place, with established methods for communication amongst themselves and with counsel"); *Varghese,* 589 F.Supp.2d at 392 (listing factors for evaluating cohesiveness: "(1) the existence of a pre-litigation relationship between group members; (2) involvement of the group members in the litigation thus far; (3) plans for cooperation; (4) the sophistication of its members; and (5) whether the members chose outside counsel, and not vice versa").

*Peters*, 2012 WL 946875, at *7. Here, each member of both proposed groups is sophisticated and experienced.

It is undisputed that the Ironworkers Group has a pre-existing relationship. Specifically, the members share certain resources. Each group member's general counsel, for example, is from the same law firm which advises the funds in normal course of their business – Colleran, O'Hara & Mills LLP. (R. 56-3, Declaration of Patrick Doherty, at ¶ 4.) The Ironworkers Group has represented that while the Colleran, O'Hara & Mills LLP law firm will oversee this litigation, it will not share in any attorneys' fees awarded by the Court to lead counsel in this action. Furthermore, the three group members of the Ironworkers Group share the same investment manager that invested in Hospira on their behalf, and all three group members share the same investment consultant. (*Id.* at ¶ 5.) As such, the Ironworkers Group contends that it is better able to handle the case efficiently and monitor the status and progress of the case.

In contrast, the Combined Institutional Investors Group does not share any relationship that pre-dates this litigation. In support of their amended motion, however, Marc LeBlanc, the Fund Administrator of Sheet Metal; Tine Procureur, the Legal Advisor of KBC; Charles O'Neill, the Fund Administrator for the Laborers Funds; and Darris Garoufalis, the Fund Administrator for the Roofers Funds, submitted sworn declarations expressing their request to work jointly as lead plaintiff and their initial plans for cooperation. (RR. 53-2, 54-4.) Specifically, they have each represented that in "light of the fact that as union funds and or institutional investors, we often find ourselves supporting similar causes, we believe a collaborative approach is appropriate here." (R. 53-2, Joint Decl. at ¶ 9; R. 54-4, Joint Decl. at ¶ 9.) "All of the movants have substantial losses at stake, are experienced fiduciaries who are familiar with overseeing securities litigation and selected experienced counsel to lead the charge against defendants and their well-qualified counsel." (*Id.*) The joint group has "committed to a zealous, yet efficient, prosecution of this case and will continue to be actively involved in this litigation." (*Id.* at ¶ 12.) In addition, they have "agreed to exercise joint decision-making and to work together in this action to fairly and adequately protect the interest of the Class." (*Id.*) Furthermore, they propose that the individual funds and institutional investor will "regularly review and discuss case filings with counsel, as well as other steps we have taken to ensure that the work performed in this action is non-duplicative and in the best interests of the class." *(Id.)* Finally, they represent that they are "committed to actively monitoring our counsels' prosecution of this litigation on behalf of the class. In the event the Court approves of our Stipulation, we have instructed counsel to, at minimum, hold team conference calls on an as-needed basis to discuss developments in the action and to review assignments to ensure there is not duplication of effort." (*Id.* at ¶ 14.)

Given all of the relevant factors, the Combined Institutional Investor Group is the most adequate plaintiff. It is a small group that has the largest financial interest in the relief sought by the class. The group has four members, thus they are small enough that they can adequately control and monitor the litigation. *Cendant*, 264 F.3d at 267. Although the Institutional Investor Group and the Laborers and Roofers Funds did not have a relationship that pre-dates this litigation, that fact is not dispositive, especially given the recent trend of alining small groups of sophisticated investors to serve as lead plaintiff even if they do not have pre-existing relationships. *See Bang*, 2011 WL 91099, at *2. The Combined Investor Group is not "simply an artifice cobbled together by cooperating counsel for the obvious prupose of creating a large enough grouping of investors to qualify as lead plaintiff," but is instead a "small, and presumptively cohesive" group of sophisticated and knowledgeable investors with aligned interests. *See Goldstein*, 2011 WL 6075861, at *6. Through their affidavits, the Group's members have established that they intend to work together cooperatively and cohesively in this litigation. They have set forth a general working strategy which supports that they will function smoothly and coordinate the litigation strategy and decision making in this litigation. This presumption has not been rebutted.

Finally, all movants here are comprised of groups. The Court notes that, unlike the other groups, the Combined Institutional Investor Group is more diverse – it is comprised of both pension funds and a large institutional investor that provides financial and insurances services. This diversity, along with the Combined Institutional Investor Group's largest financial interest in this litigation and the other factors discussed above, makes it the most capable of adequately representing the interests of the class members.

**IV.     Rule 23 Requirements**

The PSLRA further provides that the lead plaintiff must "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(I)(cc). Rule 23(a) provides that a party may serve as a class representative "only if: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims and defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." The typicality and adequacy elements are the relevant factors to the appointment of a lead plaintiff. The Combined Institutional Investor Group has satisfied its burden by making a preliminary showing that it satisfies the requirements of Rule 23.

Under Rule 23(a), a plaintiff's claims are typical if they "arise[] from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998). Here, for purposes of selecting the lead plaintiff, the Combined Institutional Investor Group's claims are based on the same legal theories and arise from the same events and course of conduct giving rise to the claims of the other class members in this case. As such, it meets the typicality requirement of Rule 23(a). *See Johnson v. Tellabs*, 214 F.R.D. 225, 228 (N.D. Ill. 2002).

The Combined Institutional Investor Group also meets the adequacy requirement in Rule 23(a). A lead plaintiff meets the adequacy requirement if (1) its claims are not antagonistic or in conflict with those of the class; (2) it has sufficient interest in the outcome of the case to ensure vigorous advocacy; and (3) it is represented by competent, experienced counsel who be able to prosecute the litigation vigorously. *Id.* at 228-29. There is no evidence before the Court

suggesting that the Combined Institutional Investor Group's interests are in conflict with those of the purported class. Given its alleged losses, it has a substantial interest in the outcome of this case. Finally, the Combined Institutional Investor Group is represented by competent, experienced counsel.

**V.     Lead Counsel**

The Court appreciates that all of the counsel representing the parties who moved for lead plaintiff in this case are highly skilled and have extensive experience in the area of securities litigation. The high quality of the submissions in support of their motions demonstrates their level of skill and experience.

The PSLRA provides that the lead plaintiffs shall, subject to Court approval, select and retain counsel to represent the class they seek to represent. 15 U.S.C. § 78u-4(a)(3)(B)(v). The Combined Institutional Investor Group has selected Motley Rice LLC and Robbins Geller Rudman & Dowd LLP to serve as co-lead counsel. Given the extensive experience both of these firms have in the area of securities law, the Court approves them as co-lead counsel in this case. The parties are on notice, however, that the Court will carefully scrutinize any proposed fee award and will not hesitate to reject such an award if it proves to be unreasonable, especially given that two counsel are being appointed as lead counsel. *See* 15 U.S.C. § 78u-4(a)(6) (limiting the total award of attorneys' fees and expenses to "a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class"). *See also In re Sprint Corp. Sec. Litig.*, 164 F.Supp.2d 1240, 1244 (D. Kan. 2001) ("Co-lead counsel are hereby on notice that the court will not approve any possible award of fees and expenses that reflects duplication, inefficiency, or the costs of coordinating the efforts of the two firms.").

**CONCLUSION**

The Court grants the amended motion of the Combined Institutional Investor Group to serve as lead plaintiff in this case. The Court also approves the selection of Motley Rice LLC and Robbins Geller Rudman & Dowd LLP as lead counsel. The remaining motions are denied.

Dated: April 18, 2012

_____
AMY J. ST. EVE
U.S. District Court Judge